UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY T. REGNIER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:25-cv-00271 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| CAYLA COLEMAN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jeffrey T. Regnier ("Regnier"), Greta Keranen ("Keranen"), Kee Firearms and Training, LLC ("Kee Firearms), and Kee Construction (altogether, "Plaintiffs"), brought suit against Defendants, including former U.S. Secret Service ("USSS") agent Cayla Coleman ("Coleman"), alleging, that for decades, the Will County States Attorney's Office ("SAO"), in conjunction with the USSS and Will County Sherriff's Department ("WCS"), have been bringing knowingly frivolous civil forfeiture claims against citizens of Will County to "line the pockets" of the SAO and other Illinois government agencies. The Complaint alleges that Defendants violated the Fourth, Eighth, and Fourteenth Amendments, including through Coleman's actions to investigate the Plaintiffs for allegedly criminal conduct, draft an affidavit, and obtain a warrant for the seizure of Plaintiffs' assets identified as being or deriving from criminal proceeds. Plaintiffs seek redress under 42 U.S.C. § 1983 (Count I) and Illinois common law in tort (Counts IV and V). Coleman now moves the Court to dismiss Plaintiffs' Complaint for failure to state a claim. For the reasons set forth below, the Court grants Coleman's Motion to Dismiss ("Motion") [29].

**BACKGROUND**

The following facts are assumed true for purposes of resolving this Motion.

### A. Underlying State Proceedings

On or around February 2023, Plaintiffs Regnier and Keranen were criminally charged in Will County Circuit Court with multiple counts of theft, fraud, and money laundering in connection with the Paycheck Protection Program ("PPP"), a federal government-funded loan program. (*See* Dkt. 13-1.)[1] At the same time, the Will County Circuit Court issued a seizure warrant ordering the seizure of three financial accounts held at Fidelity Investments (the "Fidelity Accounts") and two vehicles. (Dkt 13-2.) The Seizure Warrant commanded Fidelity Investments, as custodian of the Fidelity Accounts, to liquidate the assets in those accounts and then produce a bank check made payable to the Will County Cooperative Police Assistance Team in an amount equal to the liquidated proceeds of the accounts. *Id.* Since the execution of the seizure warrant, the proceeds of the Fidelity Accounts have been held by WCS.

In March 2023, the SAO initiated civil forfeiture proceedings (the "Forfeiture Action") against the Fidelity Accounts and vehicles. (Dkt. 13-3.) After a grand jury issued a superseding indictment in the criminal cases against Plaintiffs in May 2023, the SAO filed two forfeiture complaints in the Forfeiture Action. (Dkt 13-4.) In January 2024, Plaintiffs filed a motion to dismiss the Forfeiture Action, (Dkt. 13-5), which the state court denied in August 2024. (*See* Dkt 13-7.) In January 2025, Plaintiffs filed another motion to dismiss the Forfeiture Action. (Dkt 13-8.)

### B. Present Federal Proceeding

While their renewed motion to dismiss the Forfeiture Action was pending, Plaintiffs filed the instant action with this Court regarding the "unlawful" nature of the underlying seizures. In their Complaint, Plaintiffs allege Coleman, acting in her capacity as an agent of USSS, compiled the results

---

[1] The Court takes judicial notice of criminal case nos. 23-cf-369 and 23-cf-370 and forfeiture action nos. 23-mx-584 and 23-mx-741 that are currently pending in Will County Circuit Court, which have a direct relation to matters at issue. *See* Fed. R. Evid. 201(b); *see Opoka v. Immigration & Naturalization Service*, 94 F.3d 392, 394 (7th Cir. 1996).

of a joint investigation performed between USSS and WCS, and drafted and tendered a knowingly false affidavit in hopes of achieving a search warrant against the property belonging to Plaintiffs and their businesses Kee Firearms and Kee Construction. (Dkt. 1 at *5.) Plaintiffs assert the affidavit overreaches by taking the Vehicles and Fidelity Accounts, which were valued in excess of $5.5 million, when probable cause could not reasonably have applied to more than $274,000, the sum of the three alleged PPP loans and unemployment benefits at issue in the underlying prosecution. (*Id.* at *6.) A vast majority of these seized funds in the Fidelity Accounts were stock, which as a result of the warrant, were sold upon seizure, resulting in a loss of approximately $1 million to Plaintiffs and depriving them of "substantial" appreciation since their sale. (*See id.* at *6-7.)

In the Forfeiture Action, Defendants state there was a larger investigation into money laundering due to "several large cash deposits" which "appeared to have no apparent economic, business, or lawful purpose," making the seizure, appropriate. (*See id.* at *7.)

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

**DISCUSSION**

Coleman argues that Plaintiffs' § 1983 claim (Count I) must be dismissed because § 1983 does not apply to federal officers, and even if Plaintiffs' claims were construed instead as actions under

3

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), they still fail to state a claim. (Dkt. 30 at *1.) Coleman also argues Plaintiff's common law claims in tort, Counts IV and V), as to Coleman individually and with the United States substituted in her place under the Federal Tort Claims Act ("FTCA"), must be dismissed because Plaintiffs failed to fulfill the FTCA's administrative exhaustion requirements. (*Id.*)

## I. COUNT I: 42 U.S.C. § 1983

In order to be liable under 42 U.S.C. § 1983, a defendant must have both (a) acted under color of state law and (b) violated a constitutional right. *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004). It is well established that federal agents acting solely under color of federal law are not subject to suit under § 1983. *Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir. 1976); *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (holding claim against a federal officer may not proceed under § 1983); *Clinkenbeard v. Auten*, 23-2217, 2024 WL 3026125, at *1 (7th Cir. June 17, 2024) (holding § 1983 does not apply to federal officers acting under color of federal law); *Coleman v. United States Marshals Serv.*, 25-CV-296, 2025 WL 2590387, at *2 (N.D. Ill. Sept. 8, 2025) (Gottschall, J.)(accord).

The Seventh Circuit has recognized, however, that a § 1983 action can lie against federal employees, as it can against private individuals, if they conspire or act in concert with state officials to deprive a person of their civil rights under color of state law. *See Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). Importantly, though, where both the impetus for and the execution of the actions complained of derive from federal officials, the mere presence of a state agent or action does not turn a federal law enforcement endeavor into state action sufficient to support a § 1983 claim against the federal agents whose official actions necessarily stand on an independent, federal law bottom. *See Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir. 1976).

Coleman argues that Plaintiffs' § 1983 claim should be dismissed outright because there is no dispute that, at all times and during all relevant actions, Coleman acted in her capacity as a federal

4

officer of USSS. (*See* Dkt. 30 at *2.) In response to Plaintiffs' argument that such an action is appropriate because Coleman conspired or acted in concert with state officials, Coleman argues Plaintiffs' allegations of a "conspiracy" are unsubstantiated and conclusive, at best. (*See* Dkt. 38 at *3.) Finally, Coleman argues if Plaintiffs attempt to bring a *Bivens* action against Coleman in the alternative, a remedy against federal officials for certain constitutional violations, Plaintiffs still fail to state a claim for which relief can be granted. (*Id.*) Specifically, Coleman argues that, because the Supreme Court has never authorized a *Bivens* remedy for seizure of property and because recognizing a new remedy is a "disfavored judicial activity," the Court should not imply one. (*See* Dkt. 30 at *8.)

Plaintiffs, by contrast, assert that Coleman's acted, without question, under color of state law. Plaintiffs argue that because Coleman submitted her affidavit for the purpose of use in Will County Court, for criminal charges in a state proceeding, for violations of state law, in concert with and for the benefit of SAO, Coleman was functionally acting as an agent for officials of the State of Illinois. (*See* Dkt. 34 at *3-5). Consequently, Plaintiffs argue there is "absolutely no need" to construe their § 1983 claim as a *Bivens* claim, categorizing the entire argument by Coleman as "irrelevant." (*See id.* at *5.)

The Court concludes that Coleman, a USSS employee, acted at all relevant times under color and authority of federal law. Coleman investigated Plaintiffs for unlawfully obtaining federal PPP loans, authority she held under federal law, regardless of whether the resulting charges were brought under state law. Even if Coleman acted in concert with state actors to pursue a state criminal proceeding, that does not mean that Plaintiffs sufficiently alleged that Coleman engaged in a conspiracy as to be amenable to suit under § 1983. In their Complaint, Plaintiffs do not allege who Coleman reached a conspiratorial agreement with, nor when, nor to what end. Instead, Plaintiffs merely advance broad-sweeping allegations of "decades" of purportedly "frivolous civil forfeiture claims," (Dkt. 38 at *4), without providing any facts as to how Coleman was or could have, at all, been

5

involved in this decades-long purported scheme. Accordingly, the Court determines Plaintiffs fail to allege enough facts, taken as true, to push the predicate allegation of "conspiracy," as is required to hold a federal employee liable under § 1983.

The Court also disagrees with Plaintiffs' contention that there is "no need" to construe their § 1983 claim as a *Bivens* claim, having determined Coleman acted under color of federal law. Plaintiff's assertion that to the extent the Court addresses Coleman's *Bivens* argument, Plaintiffs "reincorporate their arguments" from their § 1983 claim, is inapposite. The Court agrees with Coleman that these arguments fail to join issue on the Supreme Court's two-step framework for evaluating *Bivens* claims: first, whether Plaintiffs' claim arises in a new context from a previously authorized *Bivens* claim and second, whether any special factors counsel hesitation for the court to engage in the "'disfavored' judicial activity" of recognizing new implied rights of action. *See Abbasi*, 582 U.S. at 139-140. The Court need not engage in this analysis, however, because Plaintiffs functionally waived any right to assert *Bivens* claims through their cursory response that was woefully inadequate to address the *Bivens* framework. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments...are waived.").

Accordingly, the Court grants Coleman's Motion to Dismiss Plaintiffs' § 1983 claim as pled, as well as any *Bivens* claim pled in the alternative.

I. **COUNT IV and V: Negligence and Gross Negligence/Recklessness**

The Plaintiffs' alternative claims, Counts IV ("negligence") and V ("gross negligence/recklessness"), sound in common-law tort. Because any common law tort action commenced against a federal employee acting within the scope of their federal employment is deemed to be an action against the United States, the United States is substituted as Defendant for Coleman and the putative "unknown John and Jane Doe agents of the United States Secret Service." *See* 28 U.S.C. § 2679(d)(1). Additionally, because the FTCA is the "exclusive" jurisdictional basis for any

common law tort claim against the United States or any employee of the United States "while acting within the scope of his [or her] office or employment, 28 U.S.C. § 1346(b), the Court analyzes Plaintiffs' claims according to its guidelines. *See Duffy v. United States*, 966 F.2d 307, 313 (7th Cir. 1992) ("a suit against the United States is the exclusive remedy for persons with common law tort claims resulting from the actions of federal employees taken within the scope of their employment.").

An FTCA action initiated against the United States can only be commenced after a plaintiff has presented an administrative claim to the appropriate federal agency and that agency has denied the claim or has failed to issue a final decision within six months of the date that the claim was presented. *See* 28 U.S.C. § 2675(a). This administrative exhaustion requirement does not apply, however, to third party complaints, cross claims, or compulsory counterclaims. *See* 28 U.S.C. § 2675(a); *Northridge Bank v. Cmty. Eye Care Ctr., Inc.*, 655 F.2d 832, 836 (7th Cir.1981). In other words, compulsory counterclaims are included in the exception because they do not require an independent grant of jurisdiction. *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir.2004).

Accordingly, the Court analyzes whether Plaintiffs' allegations qualify as compulsory counterclaims as to afford Plaintiffs an exception to the administrative exhaustion requirement of the FTCA—it finds they do not. Rule 13(a) of the Federal Rules of Civil Procedure defines compulsory counterclaims as a claim that, "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Fed. R. Civ. P. 13(a). In the Seventh Circuit, a "logical relationship" test is applied to determine whether a counterclaim arises from the same transaction or occurrence. *Price v. United States*, 42 F.3d 1068, 1073 (7th Cir.1994). The Court need not apply the "logical relationship" test because it agrees with Coleman that the claims brought by the Plaintiffs when they initiated suit, are merely: claims. A compulsory counterclaim would be one brought in response to claims filed by the government. *In re Price*, 42 F.3d 1068, 1072 (7th Cir. 1994). Here, Plaintiffs initiated this lawsuit to bring claims and neither Coleman nor the United States brought any claim against

7

plaintiffs—not even in the parallel Will County forfeiture litigation, where Plaintiffs concede Coleman is not a party, meaning Plaintiff's cannot bring any "counterclaims" against her as to avoid the exhaustion requirement of the FTCA. Accordingly, the Complaint does not allege that the Plaintiffs ever presented an administrative claim to the USSS as required under the FTCA, and because the USSS attests that none of the Plaintiffs filed an administrative tort claim, the Court must dismiss Counts IV and V.

**CONCLUSION**

For the foregoing reasons, the Court grants Coleman's Motion to Dismiss [29] (Count I), with prejudice, and Count IV and V, without prejudice pending proof of administrative exhaustion.

**IT IS SO ORDERED.**

Date: 12/30/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge